Bigelow, J.
The only question submitted to the consideration of the court in this case is, whether Gregerson 6c Sumner, who were summoned as trustees of the principal defendant, are legally chargeable as such.
The main facts, upon which the decision of this question turns, are these. On the 23d day of November, A. D. 1843, the principal defendant, Brown, was the owner of the brig Maria L. Hill, then lying in the port of Perry, in the state of Maine, where she had, a short time previously, been built, and where said Brown, the owner, resided. On that day and at that place, he conveyed said brig to said Gregerson & Sumner, the supposed trustees, by a deed in the common form of a mortgage of personal property, subject, however, to a previous mortgage, made on the same day, to the plaintiff, of one half of said vessel. The condition of the mortgage was: “ That if said Brown should pay, or cause to be paid, in six, nine, and twelve months, in three equal payments from the date of the mortgage, to said Gregerson & Sumner, the full amount of their bill for sails, rigging, and supplies to the vessel, amounting to thirty three hundred dollars or thereabouts ; and also such sums as Gregerson 6c Sumner should thereafter pay for insurance, and all their commissions on business done for the vessel, then the mortgage was to be void, otherwise to remain in full force.” By this conveyance, Gregerson 6c Sumner became mortgagees of the entire vessel, subject only to the previous mortgage of one half to the plaintiff. It is admitted by the parties that the mortgage to Gregerson 6c Sumner is in due form, and properly recorded *310 in the book of records of the town of Perry on the day of its date, according to the statute provisions of the state of Maine. No part of the debt due to Gregerson & Sumner was paid ; and on the 23d day of November, 1844, all of the instalments having then been long due and unpaid, they took possession of said brig in New York, where she then was, under their mortgage, for breach of condition, received from the master the freight money of the previous voyage just then completed, amounting to nine hundred dollars, agreeing to pay the bills then outstanding against the vessel, which they accordingly did; procured a part of a cargo of hemp, some of which was shipped on their own account, and ordered her round to Boston, for which place she sailed about December 1, 1844. While prosecuting her voyage thither, the brig was totally .lost. After taking possession under their mortgage, and about the time the vessel left New York for Boston, Gregerson & Sumner procured two policies of insurance on the brig, for whom it might concern, payable to themselves in case of loss; one from the Warren Insurance company for five thousand dollars, and the other from the Equitable Safety Insurance company for seventeen hundred dollars, the vessel being valued in both policies at nine thousand dollars. After the . loss of the brig, and before the service of the writ in this case upon them, the insurance money was paid to Gregerson & Sumner. In their answers, the trustees state that the insurance was effected solely for their own interest in the vessel, and for that of Alfred Hill, master of the brig, to whom Brown had previously conveyed one quarter part of the brig, subject to the previous mortgages thereon to the plaintiff and to said Gregerson & Sumner. They deny that said insurance was effected in any way for or on account of said Brown, the principal defendant, or that he has any right or claim to any part of the money received by them under said policies. Upon these facts, the liability of Gregerson & Sumner to be charged as trustees depends; and the decision of this question must turn upon the right of Brown, the principal defendant and original owner and *311 mortgagor, to claim of them the balance remaining in their hands, after paying their debt and charges in full.
The mortgage, under which the supposed trustees took possession of the brig, was made in the state of Maine, by a person domiciled there, upon property there situated, and the conveyance was there completed and took effect. The obligation of the contract, the rights it conferred, and its legal effect, must, therefore, be determined by the laws of that state. Story’s Confl. Laws, § 241 et seq. By Rev. Sts. of Maine, c. 125, § 30, which was in force at the time this mortgage was made, it is enacted, that “ when the condition of any mortgage of personal property has been broken, the mortgagor, or any person lawfully claiming or holding under him, may redeem the same, at any time within sixty days after said breach.” Previous to the enactment of this statute, it had been decided by the supreme court of Maine, in Flanders v. Barstow, 6 Shepley, 357, that by a conveyance of goods in mortgage, the whole legal title passed conditionally to the mortgagee, and, if not redeemed by the time stipulated, the title became absolute at law; and that, if goods be sold by a mortgagee, after condition broken by the neglect to pay one of several notes secured by a mortgage, for a sum exceeding the entire amount of the debt, to secure which the mortgage was given, the balance over and above the debt due the mortgagee cannot be recovered of him by the mortgagor, in an action for money had and received. The statute above cited was enacted subsequently to the case of Flanders v. Barstow, and was intended to enlarge the time of redemption, by giving the mortgagor sixty days after breach for that purpose. The decision of the supreme court of Maine was only declaratory of the common law, of which the rule has always been, that a mortgage of personal property is a conveyance of the legal title presently, defeasible upon a condition ; and it becomes an absolute interest at law immediately, if not redeemed at the appointed time. 4 Kent’s Com. 138. Such was the law of this commonwealth, as we suppose, until the St. of 1843, c. 72, § 1, which enlarged the time of redemption until sixty days after notice of an inten *312 tion to foreclose. Under the statute of the state of Maine above referred to, by -which the rights of mortgagor and mortgagees in the present case are to be governed, tnere can be no doubt that the title of the mortgagees of personal property becomes absolute at law sixty days after breach of condition. On the 23d day of November, when Gregerson & Sumner took possession of the brig in New York, a breach of the condition of the mortgage had existed over six months ; and, therefore, they then became absolute owners of the vessel, so far as Brown, the original mortgagor, was concerned, without any right on his part to redeem, or any claim or interest at law in the vessel or her proceeds. This being so, it follows as a direct and necessary consequence, that the insurance effected by them, subsequent to their taking possession, was on their own sole account and interest, except so far as they voluntarily permitted Hill, the master, to participate in it; and that Brown having previously lost all title to the brig, by his failure to fulfil the condition of the mortgage and its consequent foreclosure, had no insurable interest in the vessel, and no right to claim of the mortgagees any portion of the money received by them under the policies. The supposed trustees cannot, therefore, be charged for any part of the insurance money.
It was urged, in behalf of the plaintiff, that upon the facts disclosed it did not appear that they took possession of the brig for the purpose of vesting the title in themselves, and that it was fairly to be inferred that they acted in part as agents for Brown in effecting the insurance, and intended that he should receive the balance remaining in their hands after their debt was paid. The court are not at liberty to draw any such inferences from the answers of the trustees. They are, for the purposes of this case, to be taken as true. Rev. Sts. c. 109, § 15. They expressly state, that they did take possession of the vessel under their mortgage; that the insurance was not effected for or on account of Brown, the original owner and mortgagor, either in whole or in part; that he had no interest therein; and that they had carried the balance, of money received under the policies to profit and *313 loss account upon their own books. So far as they allowed the master of the vessel to participate in the insurance money, it was entirely voluntary on their part, and the result of a special agreement made by them with him.
The question still remains, whether Gregerson & Sumner are liable to be charged as trustees of Brown, for any part of the sum of nine hundred dollars received by them of the master at New York, at the time they took possession of the vessel, for freight earned by her in the voyage just then completed. This, money was received as earnings, while the brig was allowed to be in the possession of Brown, the principal defendant, as owner of three fourths, and of Hill, the master, as owner of one fourth, sailing her with the assent and knowledge of Gregerson & Sumner, on then- own account, and liable for all charges and expenses, and with a right to her earnings. This money, therefore, did not belong to Gregerson & Sumner as mortgagees. Their lien extended only to the vessel, and not to her earnings before they took possession under their mortgage. They received it from the master, upon an agreement, on their part, to pay out of it the bills then outstanding for current expenses against the vessel. Three fourths of this sum, therefore, belonged to Brown, the principal defendant,.and is to be accounted for to him by Gregerson & Sumner, after paying the said charges against the brig. Upon the facts in this case, it is quite apparent that they have realized a sum of money under the policies of insurance more than sufficient to pay the debt and charges due from Brown to them, so that they can have no set off against this sum other than the bills which, by agreement with the master, were to be paid out of it. If, therefore, any part of the nine hundred dollars is remaining in their hands after paying such bills, they are liable to be charged, as trustees of Brown, for three fourths of such balance. In con formity with the agreement of the parties, the case must be sent to an assessor, to ascertain how much of that sum is now remaining in their hands.